## OSAGE OIL & REFINING CO. v. HALLER et al.

(Circuit Court of Appeals, Second Circuit. March 6, 1922.)

No. 207.

1. **Corporations ⊙121(5)—Evidence held not to show misrepresentation or actual mistake as to identity of corporate stock.**

Evidence as to a sale of stock *held* to show there was no misrepresentation that the corporation was an Oklahoma corporation by the same name, and that there was no mutual mistake as to the identity of the corporation.

2. **Corporations ⊙99(1)—Stock exchanged by corporation for stock in other corporation presumed to be that already issued, so that exchange did not violate the South Dakota Constitution as to issue except for money, labor, or property.**

Stock exchanged by a South Dakota corporation for stock of another corporation is presumed, where there was evidence that a block of the stock had been issued to its treasurer, and there was no evidence as to the issuance of the stock actually exchanged, to have been stock theretofore lawfully issued by the corporation, so that the exchange did not violate Const. S. D. art. 17, § 8, prohibiting the issue of corporate stocks except for money, labor done, or property actually received.

3. **Injunction ⊙241—Decree dismissing bill can authorize recovery by defendant on injunction bond.**

Where a temporary injunction against the sale of corporate stock has been issued, the court had power to provide in its decree dismissing the bill that the defendant should recover on the injunction bond such damages as he could show.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by the Osage Oil & Refining Company against Alice E. Haller and W. R. Chandler. From a decree dismissing the bill, and directing that defendant Chandler recover of plaintiff and the sureties on an injunction bond such damage as he had suffered by reason of the issuance of a temporary injunction restraining him from transferring the stock in controversy, the plaintiff appeals. Affirmed.

Samuel H. Wandell, of New York City, for appellant.

Hedges, Ely & Frankel, of New York City (David Cohen and Louis Frankel, both of New York City, of counsel), for appellee Chandler.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

⊙For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

MAYER, Circuit Judge.   On March 18, 1920, Chandler entered into an agreement with plaintiff to sell its stock on a commission of 25 per cent. cash.

In the early part of May, 1920, Chandler met defendant Alice Haller, whom he had known for a number of years, and she told him that her husband was ill, and that they had exhausted their resources, and she asked him to handle some stock that her husband had obtained for her.   She offered to divide the proceeds if he would finance the stock, but he told her that he was not in a position financially so to do.   She said she had 25,000 shares of oil stock, and he made a memorandum that the name of the company was American Oil & Refining Company, and told Mrs. Haller that he knew of an oil stock that was paying 5 per cent. dividends quarterly, and suggested that, if she could dispose of her oil stock and get the other stock, she would have a source of income.   This was agreeable to Mrs. Haller, and Chandler then told her that he would see what he could do.   Chandler testified that he had made no investigation in respect of the stock and knew nothing concerning the same.

Thereafter Chandler saw Wetmore, the sales manager of plaintiff, and told Wetmore that he knew "a party who has got about 25,000 shares of American Oil & Refining Company stock"; that he did not know anything about this stock, but the owner would "take Osage for it if it has a market."   Wetmore told Chandler he would find out about the stock, and he did inquire of a broker named Lyon, and thereafter, on May 11, 1920, telegraphed Chandler that he could get 40 cents per share for the stock.

Chandler left a memorandum for Wetmore which at the trial had escaped the memory of both Wetmore and Chandler.   This memorandum read as follows:

"I have a party who has 25,000 shares of American Oil & Refining Co., Okla. Par, $1,000.

Will sell for 50c if necessary and put proceeds in Osage.   Can we do anything with it.                                                      "W. R. Chandler.

"Will get in touch with you on Monday.   Still pretty hoarse from cold. Sat. 12M."

As May 8th was on a Saturday, the probability is that this memorandum preceded the conversation between Chandler and Wetmore above referred to; but the date is not important.   There is a notation at the bottom of the memorandum in Wetmore's handwriting which refers to Lyon and a telephone number indicating, as Wetmore testified, that he had made inquiry of the broker Lyon.

The District Court found, and the evidence fully confirms the finding, that Chandler did not make any representation whatever as to the stock or whether or not the company was incorporated in Oklahoma or had any oil wells in Oklahoma; the only reference to Oklahoma being the abbreviated word "Okla." in the foregoing memorandum.

Wetmore testified that he did not understand from this letter that it had reference to American Oil & Refining Company of Oklahoma.

A few days after Wetmore's telegram to Chandler, the latter called on Wetmore who told him to bring in the oil stock.   On May 21

Chandler brought 27,000 shares of American Oil & Refining Company stock represented by 32 certificates, and Wetmore receipted therefor.

The certificates bore plainly on their face the words "Incorporated under the Laws of the State of Delaware."

On the same day, Wetmore gave the stock to Whitehead, the president of the Osage company, who stated to Wetmore: "That is good stock. I know this company." Wetmore told Whitehead that he had called up Lyon, and that the latter said he could give seven sixteenths, to which Whitehead answered that he could hold the stock himself, and "if it was all straight, why, he would take and issue Osage stock $10,000 worth, and take this thing and sell it." Thereupon Whitehead called up some brokers and said that the transaction was all right. When Whitehead looked at the stock he said he knew the signature of the president and vice president. Wetmore procured from Whitehead $200 for Chandler as an advance on the commission, the balance to be paid as the stock was sold.

The transaction was closed as follows: Mrs. Haller was to take Osage stock on the basis of $1.50 per share for 25,000 shares of her oil stock, while the remaining 2,000 shares were to be paid for in cash at $.40 per share. The result was that she received $801 in cash and 6,666 shares of Osage stock and she and Chandler signed a receipt, reading:

"This check (meaning the check for $801.00) and 6,666 shares of Osage Oil & Refining Company stock is accepted in full payment for 27,000 shares American Oil & Refining stock."

There was a corporation known as American Oil & Refining Company organized under the laws of Oklahoma, and plaintiff's claim, briefly stated, is that what Chandler did amounted to a false representation that the stock was the stock of the Oklahoma corporation, whereas in fact it was the stock of the Delaware corporation.

[1] There were some contradictions in the testimony which the District Court resolved in favor of Chandler and against Whitehead. There is no need for us to analyze the testimony in detail, for we entirely agree with the conclusions arrived at by the District Court: First, that there were no representations and, in any event, no false representations; and, secondly, that the case was not one of a mutual mistake of fact.

[2] This leaves for consideration the question raised by appellant that the transfer or sale of the stock of the Osage Company was void because in violation of section 8, art. 17 of the Constitution of South Dakota, which provides in part as follows:

"No corporation shall issue stocks or bonds except for money, labor done, or money or property actually received; and all fictitious increase of stock or indebtedness shall be void."

The facts, however, do not present this question. There is no evidence that the Osage Company issued these shares of stock for the purpose of buying the oil stock from Chandler. So far as the record discloses, it must be assumed that the stock had already been issued and had found its way back into the treasury of the company. The

proof is that on September 10, 1917, $2,000,000 worth of Osage Company stock was issued to one Hale, the treasurer of the company. It was sought to prove that this issue was made under a misunderstanding. and then canceled, but this proof was wholly unsatisfactory because plaintiff was unable to show any action of the board of directors or of the stockholders of the Osage Company which rescinded the transaction. The situation then was that Osage Company had already issued. stock which in the absence of proof to the contrary must be assumed to be stock which was validly issued, and it was 6,666 shares of validly issued stock which was transferred in exchange or payment for Mrs. Haller's 25,000 shares of oil stock.

In any event, the record is barren of proof that the 6,666 shares were an original issue, and, in view of this lack of proof, a discussion of the provision of the Constitution of South Dakota would be academic.

[3] That the court had power to provide in its decree that Chandler should recover on the injunction bond such damages as he could show is no longer a debatable question. West v. East Coast Cedar Co., 113 Fed. 742, 51 C. C. A. 416.

Decree affirmed, with costs.